UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HIGHER GROUND WORSHIP CENTER, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>ARKS, INC., a North Carolina Corporation; HG LEASE HOLDCO, LLC, A Delaware limited liability company, successor in interest to BTM5, LLC, a Delaware limited liability company; ROBERT KNOWLES, an individual; BL SPECIAL MANAGER, LLC, a Texas limited liability company; DOES 1-20,<br><br>    Defendants. | Case No. 1:11-cv-00077-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to stay and compel arbitration (Dkt. 9) and a motion to strike (Dkt. 15) filed by Defendants HG Lease Holdco, LLC[1] and BL Special

---

[1] HG Lease Holdco, LLC contends it was formerly known as BTM5, LLC.

Manager, LLC. For the reasons set forth below, the Court will deny the motion to compel arbitration because it finds that the arbitration clause was both procedurally and substantively unconscionable and therefore unenforceable.

## BACKGROUND

This case involves a commercial lease with option to purchase. In August 2007, Plaintiff Higher Ground Worship Center and Defendant BTM5 entered into a "Build to Minister Lease/Purchase Agreement." Another defendant in this case, Robert Knowles, created BTM5, as well as another entity, Defendant Arks, Inc., for the purpose of assisting churches and Christian organizations in the construction or expansion of their facilities. Arks describes itself in materials it distributed to church ministries as a "Church Consulting Company" that aims to provide an "unparalleled package of services to assist churches in their new building projects." Through its "Build to Minister Lease/Purchase Program," Ark offered "turn-key financing and construction loan solution for churches that need to build and have the ability to service a reasonable loan, but can't get traditional financing."

Plaintiff Higher Ground alleges that Arks induced it to enter into a lease and purchase agreement by offering unique financing and promising "that it would build an 'affordable church' that would appraise at a value significantly higher than it would cost the church to exercise its purchase option." *Pl's Opp'n* at 3, Dkt. 13. According to Higher Ground, Arks estimated that the purchase option would be "24-45% under market value," giving the ministries "instant equity" in their church. The lease and purchase

agreement designated Arks' affiliate, BTM5, to serve as the contracting party on behalf of Arks.

Higher Ground alleges that the representations Arks and BTM5 made were false. It asserts claims against Arks, BTM5, Knowles, HG Lease, and BL Special Manager for (1) violations of the Consumer Protection Act; (2) fraud; (3) declaratory judgment that the lease and purchase agreement is null and void; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; and (6) breach of fiduciary duty.

Defendants HG Lease and BL Special Manager maintain that these claims are subject to an arbitration clause in the lease and purchase agreement, which reads as follows:

> Lessor foresees no difficulty arising from the business agreement as outlined in this Agreement or in working with the Lessee, but in an effort to be prudent, addresses the issue herein:
>
> The parties to this Agreement are Christians and believe that the Bible commands them to make every effort to live at peace and to resolve disputes with each other in private or within the Christian church (see Matthew 18:15-20; 1 Corinthians 6:1-8). Therefore, the parties agree that any claim or dispute arising from or related to this Agreement, with the exception of non-payment of rent, shall be settled by biblically-based mediation and, if necessary, binding arbitration. In the event of such dispute, both parties would agree upon a Christian conciliator or conciliators who would mediate the dispute in accordance with the Rules of Procedure for Christian Conciliation o fthe Institute for Christian Conciliation, a division of Peacemaker Ministries (complete text of Rules is available at www.Peacemaker.net). The parties understand that these methods shall be the sole remedy for any controversy or claim arising out of this Agreement and expressly waive their right to file a lawsuit in any civil court against one another for such disputes, except to enforce an arbitration provision.

Based on this provision, Defendants HG Lease and BL Special Manager[2] move to stay this litigation and compel arbitration. Higher Ground responds that the arbitration clause is unconscionable and therefore unenforceable because the terms were dictated to Higher Ground, who is a relatively unsophisticated party compared to Defendants, and because the clause is excessively one-sided and lacks mutuality.[3]

## LEGAL STANDARD

The Federal Arbitration Act provides that agreements to arbitrate are generally valid and enforceable unless grounds for revoking the agreement exist in law or equity. 9 U.S.C. § 2; *Perry* v. *Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2525 (1987). Whether there is a legal or equitable reason for revoking the agreement is a matter of state contract law. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002). Federal courts determining the validity of an agreement to arbitrate should apply ordinary state-law principles that govern the formation of contracts; thus, general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. *Id.*

---

[2] For ease of reference, the Court will refer to Defendants HG Lease and BL Special Manager collectively as HG Lease.

[3] Higher Ground also argues that: (1) the arbitration agreement has been waived; (2) HG Lease and BL Special Manager fail to show they are entitled to enforce the agreement because they were not parties to the agreement; (3) the arbitration agreement, which requires that the Rules of Christian Conciliation apply to the arbitration, denies Higher Ground access to secular law; and (4) the arbitration clause is unenforceable because it denies Higher Ground the right to vigorous advocacy by an attorney. But because the Court finds that the arbitration agreement is unenforceable, it will not address this other arguments.

The choice of law provision in the lease and purchase agreement mandates that North Carolina apply.

## ANALYSIS

In North Carolina, a contract or clause is unenforceable if it is both procedurally and substantively unconscionable. *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008). Both procedural and substantive unconscionability must be present to prove unconscionability. *See Martin v. Sheffer*, 403 S.E.2d 555, 557 (N.C. 1991). But they need not be present in the same degree. Courts apply a sliding scale: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Tillman*, 655 S.E.2d 362 (N.C. 2008).

### 1. Procedural Unconscionability

Procedural unconscionability involves "bargaining naughtiness" in the formation of the contract, i.e., fraud, coercion, undue influence, misrepresentation, inadequate disclosure. In *Tillman v. Commercial Credit Loans, Inc.*, the North Carolina Supreme Court found the clause was procedurally unconscionable because the plaintiffs were rushed through the loan closing, the loan officer never mentioned the arbitration clause at closing, the defendants admitted they would have refused to make a loan to plaintiffs rather than negotiate the terms of the arbitration clause, and, "the bargaining power between defendants and plaintiffs was unquestionably unequal." 655 S.E.2d at 370.

Like the plaintiffs in *Tillman*, Higher Ground is relatively unsophisticated when compared to BTM5, Arks, and Knowles – parties that regularly engaged in the type of transaction at issue here and who drafted the agreement. Arks' business involved offering "turn-key financing" and construction loan solutions to churches with a need to build and the ability to service a reasonable loan, but without the ability to obtain traditional financing. In contrast, Higher Ground is not a sophisticated commercial entity engaged in business for profit, but rather a local church led by Pastor Seip. Pastor Seip's received his GED and has undergone ministerial training, but he has no experience with complex commercial transactions.

Higher Ground further maintains that the agreement was presented to them as a "take it or leave it" deal with little opportunity for Higher Ground to negotiate its terms. The parties never discussed the arbitration clause, which is buried in an un-highlighted paragraph on page 18 of a 20 page document amidst other boilerplate language. Indeed, according to Pastor Seip, Arks and Knowles pressured him to sign the agreement on behalf of Higher Ground and used Pastor Seip's desire to build a church as leverage while assuring him that they considered this "less a business endeavor for the Defendants, and more a calling to help fellow Christians." *Plaintiff's Opp'n* at 16, Dkt. 13.

All of these factors lend credence to Higher Ground's argument that the arbitration clause is procedurally unconscionable. On the other hand, Higher Ground is not an individual consumer without *any* bargaining power like the plaintiffs in *Tillman*. While this is a close decision, a review of all the facts and circumstances of the transaction – as

well as the Court's decision that the agreement is substantively unconscionable as described below – leads the Court to conclude that, on balance, the arbitration clause is procedurally unconscionable.  When a party who enjoys great bargaining power than another party presents the weaker party without a meaningful opportunity to negotiate, oppression and, therefore, procedural unconscionability, are present.

**2.     Substantive Unconscionability**

Substantive unconscionability ... involves the harsh, oppressive, and one-sided terms of a contract, i.e., inequality of the bargain.  *King v. King,* 114 N.C.App. 454, 458, 442 S.E.2d 154, 157 (1994) (citation omitted).  In *Tillman*, the court also found that the arbitration clause was substantively unconscionable based, in part, on its perception that, "the arbitration clause [was] excessively one-sided and lack[ed] mutuality." 655 S.E.2d at 370.

The arbitration clause in this case, like the one at issue in *Tillman*, forces the weaker party, i.e., Higher Ground, to arbitrate all its claims while preserving HG Lease's ability to litigate at least some of its claims.  In *Tillman*, the arbitration clause excepted from arbitration foreclosure actions and actions in which the total damages, costs, and fees did not exceed $15,000.  655 S.E.2d at 370.  And in this case, the arbitration clause excepts all claims for the non-payment of rent.  Indeed, that exception was utilized by HG Lease to evict Higher Ground under Idaho's wrongful detainer statute.  As illustrated by *Tillman*, the one-sidedness of the duty to arbitrate raises a serious question as to the

clause's validity. *Id.*; *see also Armendariz v. Foundation Health Psychcare Servs.*, 6 P.3d 669, 691–94 (Cal. 2000); *Iwen v. U.S. West Direct*, 977 P.2d 989, 995–96 (Mont. 1999).

HG Lease argues that the provision excepting claims for the nonpayment of rent is not one-sided because it gives a tenant a quick forum to resolve a dispute if a landlord improperly attempts to evict a tenant. But this argument ignores reality. The payment of monthly rent is the most significant benefit that HG Lease received from the lease and purchase agreement, and realistically it will be the landlord, and not the tenant, who will pursue litigation based upon the non-payment of rent. HG Lease – the party with the greater sophistication and bargaining power – has therefore imposed the arbitration forum on Higher Ground, while excluding from that forum any dispute with respect to the nonpayment of rent, which is the only remedy HG Lease is likely to need. Higher Ground is forced to forgo its constitutional right to a jury trial while in the vast majority of circumstances, HG Lease is not. Based on the one-sidedness of the arbitration clause, the Court finds that it is substantively unconscionable under general principles of North Carolina contract law.

3.  **Conclusion**

Based on the facts and circumstances of this case, the Court concludes that the arbitration clause in the lease and purchase agreement is unconscionable and therefore unenforceable. The inequality of bargaining power between the parties and the oppressive and one-sided nature of the clause itself lead the Court to this conclusion. Through the arbitration clause at issue in this case, HG Lease preserved its ability to choose an

alternative forum while denying Higher Ground the same opportunity. The Court will therefore deny HG Lease's motion to compel arbitration.[4]

## ORDER

**IT IS ORDERED:**

1. HG Lease Holdco, LLC and BL Special Manager, LLC's Motion to Compel Arbitration (Dkt. 9) is **DENIED**.

2. HG Lease Holdco, LLC and BL Special Manager, LLC's Motion to Strike (Dkt. 15) is **DENIED as MOOT**.

DATED: October 6, 2011

B. Lynn Winmill
Chief Judge
United States District Court

---

[4] Although the Court chooses not to address the issue, the Court is also troubled by provisions in the arbitration agreement requiring that the Rules of Christian Conciliation govern the arbitration process. While there is case law suggesting that this does not invalidate the arbitration agreement, *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101 (D. Colo. 1993), the Court is troubled by such a provision's effect of requiring a now-unwilling participant to engage in an arbitration process which may deprive them of due process and access to secular law.